UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA

v.  15-CR-10041 (IT)

JONATHAN WHITE,

  Defendant

OPPOSITION TO DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE

The United States of America, by Assistant U.S. Attorney Seth B. Kosto, hereby opposes defendant Jonathan White's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) ("the Motion"). (Docket No. 67).

Mr. White has served only approximately 60 months of the 120-month sentence that the Court imposed on him for sex trafficking a child. But he is obese, an underlying medical condition that places him, according to the Centers for Disease Control ("CDC"), at increased risk for severe illness from COVID-19. Since May 2020, the United States has taken the position that an inmate's diagnosis with a CDC risk factor for COVID presents an "extraordinary and compelling reason[]" that may warrant compassionate release if other criteria are also met.

Those other criteria have not been met. Mr. White's release from FCI Danbury—a facility that has aggressively managed the number of COVID cases within its walls to zero—would upset the careful weight that the Court has already given to the sentencing factors under 18 U.S.C. § 3553(a). See Statement of Reasons, Docket No. 63 ("A ten year sentence adequately reflects the seriousness of the offense and the nature and circumstances of this particular offense, and is not greater than necessary to achieve the goals of sentencing."). The Court should accordingly deny his Motion.

I.      Background

On May 17, 2016, the Court sentenced the defendant to 120 months' imprisonment following his guilty plea in the Eastern District of New York to sex trafficking a minor in violation of 18 U.S.C. §§ 1591(a) & (b)(2). (Docket No. 115). In 2012, Mr. White and a coconspirator recruited a 16-year-old girl over the social media network Tagged.com to work as a prostitute. They bought her a bus ticket from Georgia to Florida, where they posted pictures of her on Backpage.com and sold her to "johns" out of area hotels. Mr. White and his coconspirator later drove the victim the 1,200-plus miles from Florida to New York City, where the defendant again advertised her over the internet to engage in commercial sex acts. The defendant released the victim to another pimp, whose arrest resulted in her rescue. (PSR ¶¶ 10-15).

White's Guidelines sentencing range, based on a total offense level of 33 and a criminal history category of IV,[1] was 188 to 235 months. The Court sentenced White to 120 months in custody, 68 months below the Guidelines sentencing range (and 32 months below the government's 152-month recommendation).

In its Statement of Reasons for imposing a below-Guidelines sentence, the Court paid careful attention to the section 3553(a) factors:

> The defendant did not target the victim for recruitment because she was a minor, nor did he prostitute her as a minor. Though the defendant had an opportunity to observe the victim, there is no evidence that he actually knew her to be a minor. The defendant's conduct, while very serious, was among the least culpable of all conduct prohibited by this statute. Since his arrest, the defendant has proven that he has learned from this experience, accepted responsibility, and made efforts to make amends. The defendant recognizes the importance of modeling good behavior for his younger siblings and has the strong support of his family, which will reduce the risk of recidivism once released. A ten

---

[1]The defendant had two different Massachusetts convictions for distribution of cocaine base and several sentences that were imposed following probation revocations. (PSR ¶¶ 33-37).

year sentence adequately reflects the seriousness of the offense and the nature and circumstances of this particular offense, and is not greater than necessary to achieve the goals of sentencing.

(Docket No. 63).

II.     The Motion

The Motion argues that Mr. White's obesity and sleep apnea, "in combination with the COVID-19 pandemic outbreak at the Danbury FCI," constitute extraordinary and compelling reasons for his release under 18 U.S.C. § 3582(a)(1).  (Motion at 2-3).  Like the Court, Mr. White agrees that "[t]he 120 month sentence imposed on [him] took into account all of the factors in 18 U.S.C. § 3553(a)," but he argues that his having remained discipline free and completed one correspondence course and two 6-hour BOP classes during the first five years of his sentence demonstrate his readiness to resume a law-abiding life.  (Motion at 4).

On May 13, 2020, Mr. White requested compassionate release from FCI Danbury "due to the COVID pandemic" and because he was at high risk due to his "respiratory condition [for] which [he] uses a breathing machine."  (Exhibit 1 hereto).  Mr. White's request did not mention his obesity, although the condition is reflected in his height and weight in his BOP health records.  On May 15, 2020, the Warden denied the defendant's request for compassionate release because the respiratory condition he described (*i.e.*, sleep apnea) and his concerns regarding COVID were not extraordinary and compelling reasons justifying early release.  The denial also stated that Mr. White had been evaluated for but denied home confinement under the CARES Act based on his offense of conviction.  (Exhibit 2 hereto).[2]

---

[2] Because Mr. White did not request compassionate release from FCI Danbury based on his obesity, he did not exhaust that ground administratively.  The government is not asking the Court to deny the Motion on exhaustion grounds, however, as Mr. White's sex trafficking conviction will lead BOP to the same conclusion that it reached regarding home confinement,

3

III.    FCI Danbury

The defendant's Motion places FCI Danbury "at the center of the COVID-19 pandemic as it affects Federal Correctional Institutions," (Motion at 6), but he fails to acknowledge that FCI Danbury has, under court supervision, aggressively managed its COVID response to the point where there are no known active cases there among either inmates or staff.

On May 12, 2020, the federal district court in Connecticut (Shea, J.) issued a temporary restraining order requiring the Warden at FCI Danbury to: (1) identify "medically vulnerable" inmates at FCI Danbury; (2) evaluate every "medically vulnerable" inmate for home confinement under 18 U.S.C. § 3624(c) and the CARES Act within 13 days; (3) issue prompt decisions on requests for compassionate release; (4) explain how current BOP standards for compassionate release account for the COVID-19 pandemic or show cause why they should not be revised to do so; and (5) provide to the Court an individualized explanation for every denial of home confinement (or transfer to another BOP facility) to any "medically vulnerable" inmate. *Martinez-Brooks v. Easter*, 3:20-cv-00569 (MPS) (D. Conn.), Ruling on Motion for Temporary Restraining Order, https://law.yale.edu/sites/default/files/area/clinic/document/martinez-brooks_et_al_v._easter_et_al._5.12.20.pdf (visited July 16, 2020).

FCI Danbury has made significant progress following the issuance of the TRO.  The facility reviewed 314 "medically vulnerable" inmates for home confinement, designating 52 for home confinement or community placement.  Another 47 inmates were referred to BOP's Central Office for a decision; 17 of these inmates were found appropriate for home confinement.  Between the passage of the CARES Act on March 26, 2020 and May 25, 2020, FCI Danbury

---

and that the United States has reached in this opposition—that Mr. White is not a suitable candidate for release.  *See* Section IV below.

4

also gave compassionate release to or designated to home confinement another 156 inmates who were not "medically vulnerable." *Martinez-Brooks v. Easter*, May 25, 2020 Declaration of FCI Danbury Case Manager Ashley Cocho (Exhibit 3 hereto).

BOP personnel have also advised the undersigned that FCI Danbury has: (1) reduced its overall inmate census from approximately 1100 to 817 (as confirmed at https://www.bop.gov/locations/institutions/dan/, visited July 17, 2020); (2) tested each inmate for COVID-19;[3] (3) eliminated (as of this filing) any known active cases of COVID-19 (as confirmed at https://www.bop.gov/coronavirus/, visited July 17, 2020); and (4) provided isolation and quarantine wards for at-risk inmates. Whereas FCI Danbury had previously halted work details, they have now resumed, with inmates who participate in them quarantining together within the facility.

Although the battle against COVID will continue until the development of a vaccine, FCI Danbury's efforts in the last two months appear to have substantially reduced the risk of another serious outbreak there. The Court should account for these efforts as it evaluates Mr. White's request.[4]

IV.     Argument

As noted above, Mr. White is obese, and his obesity places him at risk for severe illness from COVID-19. Since May 2020, the United States has taken the position that the presence of

---

[3] According to medical records, including Mr. White on May 28, 2020.

[4] The BOP and FCI Danbury's efforts throughout the pandemic are also described at length in the Declaration of FCI Danbury's Warden, Diane Easter, which was filed in the Connecticut class action on May 5, 2020. (Exhibit 4 hereto).

CDC risk factors (including obesity) are extraordinary and compelling reasons justifying release in the presence of other factors.

Even when an extraordinary and compelling reason exists, however, a court should only grant a motion for release if it determines that the defendant is not a danger to the public, *see* USSG § 1B1.13(2), and after considering whether the § 3553(a) factors weigh in favor of release. *See* 18 U.S.C. § 3582(c)(1)(A); USSG § 1B1.13. Indeed, the Supreme Court has held that the "rule of finality" requires that sentences should be modified only in extraordinary circumstances. *Dillon v. United States*, 560 U.S. 817, 819 (2010) ("A judgment of conviction that includes a sentence of imprisonment constitutes a final judgment and may not be modified by a district court except in limited circumstances.") (internal quotations omitted). The defendant bears the burden of proving that he is entitled to relief under 18 U.S.C. § 3582. *See United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("If the defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant that decrease.")

Guidelines section 1B1.13 provides that compassionate release is only appropriate where "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Section 3142(g) provides a list of factors the Court must consider in determining whether a defendant should be detained pending trial. The first factor on that list is "the nature and circumstances of the offense" and whether the offense charged "is a crime of violence, *a violation of Section 1591*, a Federal crime of terrorism, *or involves a minor victim* or a controlled substance, firearm, explosive, or destructive device." 18 U.S.C. § 3142(g)(1) (emphasis supplied). Mr. White was charged and convicted of both "a violation of Section 1591" and a crime involving a minor victim. Congress and the Sentencing

6

Commission have thus stressed judicial caution in evaluating for release a defendant convicted of sex trafficking a minor.

Mr. White has similarly failed to show that he deserves release under the section 3553(a) factors. *See* § 3582(c)(1)(A); *United States v. Chambliss*, 948 F.3d 691, 694 (5th Cir. 2020). Here, the 3553(a) factors strongly militate against granting Mr. White a sentence reduction.

First among them, the Court should not overlook the seriousness of Mr. White's offense. It correctly assessed the seriousness when it imposed sentence on Mr. White. *See* Statement of Reasons, Docket No. 63 ("A ten year sentence adequately reflects the seriousness of the offense and the nature and circumstances of this particular offense, and is not greater than necessary to achieve the goals of sentencing."). The pandemic cannot have changed that assessment.[5]

The defendant's release would reduce his sentence below one that the Court believed was sufficient but not greater than necessary to achieve the goals of sentencing, including just punishment and the promotion of respect for the law. *See United States v. Adams*, 2020 WL 4004317 (E.D. Tenn. Jul. 15, 2020) (declining to engage in lengthy discussion of the section 3553 factors where "more than half of the defendant's sentence [under 18 U.S.C. §1591] remains unserved"). Halving Mr. White's sentence—and bringing it more than a decade below many of the sentences for minor sex trafficking in this District—would afford significantly less general deterrence. And while the United States shares Mr. White's hope that he has turned a corner, his two prior convictions for cocaine distribution and history of probation violations counsel some continued need for individual deterrence.

---

[5] To the extent the Court concluded that Mr. White was among the least culpable of minor sex trafficking defendants because there was no direct evidence that he knew his victim's age, or that the sentencing enhancements overstated the seriousness of the offense, it accounted for these factors in its original 68-month variance.

7

By opposing Mr. White's motion, the United States does not mean to minimize the impact of the pandemic, or of the particular dangers posed by the disease in a prison setting. Given FCI Danbury's progress in managing the pandemic, however, the Court should give careful weight to the Sentencing Commission's policy statements and the factors set forth in 18 U.S.C. § 3553(a): the nature and circumstances of the offense; the history and characteristics of the defendant; the substantial amount of time remaining on Mr. White's sentence; the need for general deterrence; and the potential danger that he poses to the community. These factors all counsel against release. The Court should accordingly deny the Motion.

Respectfully submitted.

                                      ANDREW E. LELLING
                                      United States Attorney

By:                */s/Seth B. Kosto*
                      SETH B. KOSTO
                      Assistant United States Attorney

July 17, 2020

## **CERTIFICATE OF SERVICE**

I, Seth B. Kosto, Assistant United States Attorney, hereby affirm that I caused a true copy of the above Opposition to Defendant's Motion for Compassionate Release on counsel for the defendant, James E. McCall, Esq., via Electronic Case Filing.


*/s/Seth B. Kosto*_____
SETH B. KOSTO
Assistant United States Attorney

July 17, 2020